Law Offices of
**MICHAEL W. CARMEL, LTD.**
80 East Columbus Avenue
Phoenix, Arizona 85012-2334
Telephone: (602) 264-4965
Arizona State Bar No. 007356
Facsimile: (602) 277-0144
E-mail: Michael@mcarmellaw.com

Proposed Attorney for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| PROSPECT MANUFACTURING, LLC | Case No. 2:15-bk-1246-BKM |
| Debtor. | **DECLARATION OF SCOTT MOHNACH IN SUPPORT OF CHAPTER 11 PETITION AND FIRST DAY MOTIONS** |

SCOTT MOHNACH, under penalty of perjury, states:

1. I am a Member of PROSPECT MANUFACTURING, LLC (the "Debtor").

2. As the Debtor's Member, I am generally familiar with the Debtor's business and financial affairs. I submit this Declaration based upon my personal knowledge as the Debtor's Managing Member in connection with the Debtor's Voluntary Petition for Relief Under Chapter 11 of the United States Bankruptcy Code filed on February 10, 2015 (the "Petition Date"). The statements set forth below are true to the best of my personal knowledge, and I am competent to testify as to the validity of these statements if called to do so.

3. This Declaration is supported in support of the factual allegations contained in the following Motions (the "First Day Pleadings") filed contemporaneously with this Declaration:

(a) Debtor's Emergency Motion for an Order Authorizing Debtor to Pay Prepetition Wages and Salaries and to Honor Prepetition Checks Issued to Employees.

(b) Debtor's Emergency Motion for to Approve Debtor-in-Possession Financing.

(c) Debtor's Motion for an Order Pursuant to 11 U.S.C. § 105(a) authorizing Payment of Pre-Petition Claims of Essential Vendors.

## Description of the Debtor

4. PROSPECT MANUFACTURING, LLC ("Debtor") is an aerospace manufacturing company. Its business is conducted at 6451 S. Ash Avenue, Tempe, Arizona. The Debtor currently has approximately twenty-five (25) full- and part-time employees.

5. The Debtor commenced operations in 2007. It currently has a line of credit with Mutual Bank of Omaha. The amount outstanding on this facility is approximately $1,815,000.00.

6. The Debtor is a manufacturer of parts for precision gas turbine engines, which are mainly installed in jet engines. Two (2) of its major customers are Honeywell and General Electric.

7. The Debtor leases two (2) free-standing buildings consisting of approximately 23,022 square feet. The current lease term is for five (5) years and commenced in May 2014.

8. The Debtor's annual revenues are approximately $4,000,000.00. The Debtor currently employs twenty-five (25) people.

## Events Leading to Chapter 11 Filing

9. The Debtor was experiencing cash flow problems in 2013, and borrowed – on an unsecured basis - $250,000.00 from Ultra Management, LLC. The principal of this entity is George Johnson who was a one-time family friend of the Debtor's principals.

10. The Debtor was unable to repay the Ultra obligation. Ultra filed a lawsuit in Maricopa County Superior Court, and obtained a Judgment on October 7, 2014.

11. The Judgment is in the amount of $288,117.64, plus 14% interest.

12. Ultra has been extremely aggressive in pursuing its collection remedies, and within the past ninety (90) days has garnished more than $65,000.00 from the Debtor's bank accounts. Ultra has also served Writs of Garnishment on the Debtor's customers.

13. This collection activity has caused a severe disruption in Debtor's ability to conduct business, and the Debtor's ongoing operations are at substantial risk, thereby causing the Chapter 11 filing.

**Emergency Motion to Approve Stipulation for Use of Cash Collateral**

14. The Debtor has negotiated a Cash Collateral Stipulation with Mutual of Omaha, who has approved a budget. The budget is attached to the Stipulation.

15. The continued use of Cash Collateral is critical to Debtor's ability to maintain operations. Absent approval, the Debtor would most likely have to cease business.

16. The proposed use of cash collateral is necessary to keep the Debtor operational until the Debtor determines if it should (1) sell the business, or (2) reorganize and maintain operations as a going concern. Having an assured cash flow allows the Debtor to encourage employees and vendors to continue to deal with the Debtor as a going concern. This will maximize recovery to the creditors.

17. The proposed budget contains conservative assumptions of payments by customers.

18. The Debtor has determined this proposed Cash Collateral Stipulation is absolutely necessary to maintain the Debtor's business relationships with vendors, suppliers, and employees, as well as to meet its working capital needs. To ensure that this Chapter 11 case proceeds optimally, the Debtor has concluded the use of cash collateral is necessary and in the best interest of the Debtor and its estate.

19. The Debtor's ability to obtain approval of the Stipulation is integral to the success of this case.

**<u>Motion for Order Authorizing Payment of Pre-Petition Wages and Salaries</u>**

**<u>And to Honor Pre-Petition Checks Issued to Employees</u>**

20. The Debtor employs approximately twenty-five (25) full-time employees as of the Petition Date (the "employees"). All of the employees are located at the Tempe location. The employees perform a variety of critical functions. Without the continued service of these employees, preserving the value of the estate will not be possible. Replacing these skilled and knowledgeable employees would be impossible.

21. The Debtor anticipates that accrued pre-petition obligations owing to the employees will be substantially less than the statutory cap of $11,725.00 for priority treatment established by Bankruptcy Code §§ 507(a)(4) and (a)(5).

22. The relief requested by this Motion will significantly reduce the administrative burden that might otherwise be imposed in this case. The compensation, benefit and reimbursement amounts that the Debtor seeks to pay to the employees constitute priority claims under Sections 507(a)(4) and (5).

23. The employees are paid on a weekly basis. The Debtor remained current with all payroll obligations to the employees through the last pay period which ended February 6, 2015. All pre-petition payroll taxes have been paid.

24. The current pay period ends February 13, 2015. Payroll obligations, including payroll taxes for that pay period are scheduled for payment on February 13, 2015.

25. Accordingly, the Debtor seeks authority to continue to honor and process the pre-petition obligations with respect to the payroll taxes and additional withholdings post-petition, in the ordinary course of business.

4

**Motion for an Order Pursuant to 11 U.S.C. § 105(a) Authorizing**

**Payment of Pre-Petition Claims of Essential Vendors**

26. The Debtor utilizes certain vendors who provide supplies and parts in accordance with extremely precise specifications required by their major customers. These suppliers are pre-approved, and are unique to the industry.

27. If the suppliers do not get paid the pre-petition amounts owed, the Debtor will not have a source to manufacture the parts for their customers, thereby putting the operations at substantial risk.

DATED this 10th day of February, 2015.

                               */s/ Scott Mohnach*
                               SCOTT MOHNACH

COPY of the foregoing emailed
this 10th day of February, 2015 to:

Elizabeth Amorosi, Esq.
Office of the U.S. Trustee
230 N. First Avenue
Phoenix, AZ 85003

Lawrence E. Wilk, Esq.
Jaburg Wilk
3200 N. Central Ave., Suite 2000
Phoenix, AZ 85012

Richard Nye, Esq.
9141 E. Hidden Spur Trial
Suite 105
Scottsdale, AZ 85255
Attorney for Ultra Management

By *Sharon D. Kirby*